STATE of South Dakota ex rel. Connie LARSGAARD, Plaintiff and Appellant,

v.

Romaine O. LARSGAARD, Defendant and Appellee.

No. 12812.

Supreme Court of South Dakota.

Submitted on Briefs Sept. 8, 1980.

Decided Nov. 5, 1980.

Roger C. Lerud, Asst. Atty. Gen., Pierre, for plaintiff and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

John E. Burke, Sioux Falls, for defendant and appellee.

HENDERSON, Justice.

## ACTION

The State of South Dakota (appellant), ex rel Connie Larsgaard, appeals from a money judgment and modification of a divorce decree entered by the trial court on April 18, 1979. Appellant contends the trial court erred in excusing Romaine O. Larsgaard's (appellee's) child support arrearages and reducing future child support payments. We affirm.

## FACTS

On June 16, 1977, Connie Larsgaard, applied for and received aid for dependent children (ADC). By accepting ADC, Connie Larsgaard legally assigned all of her support rights, including unpaid accrued payments, to the State of South Dakota by virtue of an assignment pursuant to SDCL 28–7–6.3, which provides:

An application for, or any acceptance of, aid to dependent children shall operate as an assignment by operation of law of all support rights from any person, which such applicant or recipient may have on their own behalf or on behalf of any other family member for whom the recipient is receiving assistance, including any support payments accrued and unpaid at the time of the assignment.

A judgment and decree of divorce was entered on July 19, 1977, which dissolved the marriage between Connie Larsgaard and appellee. By reference, this decree incorporated a stipulated support and property division agreement between the divorced parties. Pursuant to this agreement, appellee was ordered to pay Connie Larsgaard $325.00 per month for child support ($162.50 for each child).

On November 6, 1978, appellant moved for an entry of money judgment against appellee in the amount of $5,050.00, representing appellee's child support arrearages for the period of July 1977 through October 1978. A hearing was held on February 6, on appellant's motion where appellee submitted an affidavit which, in essence, stated the following:

1) In 1976 appellee had $17,616.50 in earnings; 1976 was the base year upon which the original order of child support was predicated.

2) That shortly after the July 1977 divorce decree judgment, appellee had become physically and mentally unable to work and as a result his income for 1977 totalled $8,576.96.

3) In 1978, appellee's income was $12,-500.00.

4) Appellee expected an income of no higher than $12,500.00 in future years.

Wherefore, appellee moved the trial court to forgive, nunc pro tunc, his prior child support delinquencies and to reduce all future child support payments to $121.87 per month per child. As a result of the February 6, 1979, hearing the trial court granted appellant a money judgment of $3,500.00 for appellee's child support arrearages and also modified appellee's future child support payments so as to reflect 25% of appellee's yearly net earnings.

Appellant subsequently moved for a rehearing. On April 9, 1979, a rehearing was conducted and, as a consequence, the trial court entered an order modifying the judgment and decree of divorce essentially as follows:

1) Appellee is to pay $3,500.00 in child support arrearages for the period of July 1977 through January 1979. (This is $1,725.00 less than what appellee would have owed under the July 1977 agreement and judgment decree.)

2) That commencing with February 1979 appellee's child support obligation will be 25% of his net yearly earnings and said payments will not be less than $35.00 per week nor more than $325.00 per month.

The trial court stated in its findings of fact: that appellee had paid $955.00 in child support up through January 1979; that shortly after the entry of judgment and divorce decree of July 1977 appellee had become physically and mentally unable to work; that there had been a substantial and material change in appellee's situation sufficient to excuse the sum of $1,725.00 in

back child support payments and to modify future child support payments commensurate with appellee's yearly earnings.

## ISSUES

### I.

Did the trial court err in excusing a portion of appellee's child support arrearages? We hold that it did not.

### II.

Did the trial court err in its finding that there has been a substantial and material change in the situation of appellant? We hold that it did not.

## DECISION

### I.

■ Appellant urges that the trial court erred in excusing appellee's child support arrearages in the amount of $1,725.00. SDCL 25-4-45 provides:

In an action for divorce the court may, before or after the judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper, *and may at any time vacate or modify the same.* (Emphasis supplied.)

Modification of support agreements can be ordered even though the original judgment was based upon a stipulation between the parties. *Connally v. Connally*, 270 N.W.2d 44 (S.D.1978). SDCL 25-4-41 provides in pertinent part:

Where a divorce is granted ... the court may compel [a provision] for the maintenance of the children of the marriage ... *and the court may from time to time modify its orders in these respects.* (Emphasis supplied.)

Appellant's contention raises an issue of first impression for this Court. Other appellate courts deciding this issue have held that trial courts have considerable discretion in modifying child support arrearages. In *Wilson v. Wilson*, 143 Me. 113, 56 A.2d 453 (1947), the Supreme Court of Maine ruled that if there are unpaid child support

installments, the trial court unquestionably has the power to direct their disposition. In such situations, the *Wilson* court stated, the trial court may decrease the amount of child support and may make its orders retroactive. The *Wilson* court believed that their holding was in accord with the intent of its applicable child support statute, which provided that the trial court "may also alter its decree from time to time as circumstances require." *See* Maine Rev.Stat. 1944, Ch. 153, § 69.

In construing a statute which provided that an order of child support shall "remain within the control of the trial court and be subject to such changes or modification as the exigencies of the case may require" (*see* Tenn. Code § 8454), the court in *Crane v. Crane*, 26 Tenn.App. 227, 170 S.W.2d 663 (1942), stated that child support payments could be modified to decrease the payments previously provided, even as to past due and unpaid installments.

The case of *Sistare v. Sistare*, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910), establishes the rule that the right to installments of alimony or support payments becomes absolute and vested once they become due and, accordingly, the decree requiring their payment is protected by the full faith and credit clause of the Federal Constitution, Article IV, § 1. The opinion, however, qualifies the rule as follows:

[T]his general rule, however, does not obtain where, by law of the state in which a judgment for future alimony is rendered, the right to demand and receive such future alimony is discretionary with the court which rendered the decree, to such an extent that no absolute or vested right attaches to receive the instalments (sic) ordered by the decree to be paid even although no application to annul or modify the decree in respect to alimony had been made prior to the instalments (sic) becoming due.

218 U.S. at 17, 30 S.Ct. at 686, 54 L.Ed. at 911. *See also Barber v. Barber*, 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82 (1944). It does appear that an order for child support is not

retroactively modifiable in New Mexico, *see Gomez v. Gomez*, 92 N.M. 310, 587 P.2d 963 (1978); California, *see Sanford v. Sanford*, 273 Cal.App.2d 535, 78 Cal.Rptr. 144 (1969); and Missouri, *see Schaffer v. Security Fire Door Company*, 326 S.W.2d 376 (Mo.App. 1959). Notwithstanding these three decisions, we take a contrary position in light of the statutory language of this state.

■ We hold that the trial court had the power to retroactively modify appellee's child support payments as evidenced by the discretion it is allotted under SDCL 25–4–41 and SDCL 25–4–45. The term "vacate" appears in SDCL 25–4–45, and the term "modify" appears in SDCL 25–4–41. We believe that the rationales of *Sistare* and *Barber* are analogous to the child support issue in this case. A trial court must adjudicate upon the realities of the domestic situation at hand and not be totally inflexible with regard to its earlier support judgment. Were this not so, grave injustices and inequities would arise. We agree with the court in *Crane*, supra, at 231, 170 S.W.2d at 665, when it stated:

> In view of the broad terms and humanitarian purposes of these statutes, we are of the opinion that the decree for the support of this minor child, even as to past-due and unpaid installments, could be modified at any subsequent terms, so as to ... decrease the allowance made, as the exigencies of the case might require.

Here, the trial court found that since the original child support judgment had been entered, the economic situation of appellee had sufficiently deteriorated to warrant a partial cancellation of the arrearages. The trial court was sitting in equity and it acted in equity. We hold that the trial court did not err in retroactively modifying its judgment of child support.

■ On a collateral contention, appellant argues that any cancelling of a debt owed the State of South Dakota is prohibited by Article III, § 24 of this State's Constitution, which reads:

> The Legislature shall have no power to release or extinguish, in whole or in part, the indebtedness, liability or obligation of any corporation or individual to the state, or to any municipal corporation therein.

Appellant contends that since the legislature is so prohibited, it follows that the judicial branch (trial court) is similarly prohibited from cancelling any indebtedness due the state. We do not agree. Appellant's right to the arrearages was not absolute nor vested. Appellant apparently takes the position that once an assignment is given, no equities or defenses can intrude upon its rights. This position is erroneous. The original judgment of child support was not final due to the fact that "the past due installments were subject retroactively to modification or recall by the (trial) court after their accrual." *Barber*, 323 U.S. at 80, 65 S.Ct. at 138, 89 L.Ed. at 84. The child support arrearages owed the state, via Connie Larsgaard, were not absolute debts unfettered by potential judicial intervention. Also, the judicial branch of government is not a limb of the legislative tree. Rather, as Article II of the South Dakota Constitution states: "The powers of the state are divided into *three distinct departments*, the legislative, executive and judicial...." (Emphasis supplied.) Appellant's argument that the trial court erred by cancelling part of a debt owed the state through its retroactive modification of appellee's arrearages is unpersuasive.

## II.

■ Appellant maintains that the trial court erred in finding a substantial and material change in appellee's ability to provide support for his children. We disagree. For child support payments to be modifiable, a change in conditions or circumstances must have occurred since the original child support judgment was entered. SDCL 25–4–45; *Smith v. Olson*, 296 N.W.2d 549 (S.D.1980); *Peshek v. Peshek*, 297 N.W.2d 323 (S.D.1980); *Matthews v. Matthews*, 71 S.D. 115, 22 N.W.2d 27 (1946). A reduction in the payor's income has been held as a sufficient change of circumstances to warrant child support modification. *Kerr v. Kerr*, 74 S.D. 454, 54 N.W.2d 357 (1952); *Greenleaf v. Greenleaf*, 6 S.D. 348, 61 N.W. 42 (1894). The trial court is em-

powered with a wide range of discretion in determining whether the change involved justifies a modification of child support payments. *Ulver v. Ulver*, 76 S.D. 371, 78 N.W.2d 830 (1956); *Weygand v. Weygand*, 68 S.D. 1, 297 N.W. 689 (1941).

Appellant's main concern appears to be that the trial court based its finding solely upon appellee's affidavit, uncorroborated by any medical proof that appellee was suffering from mental and physical impairments.

■ Even though the only tangible evidence the trial court received regarding appellee's decline in earning capacity was the aforementioned affidavit, the trial court directly observed and had contact with appellee during the various in-court proceedings. Further, appellant failed to submit any evidence whatsoever to the trial court challenging the truth of appellee's affidavit. Appellant's posture is to criticize appellee's evidence, yet offer none of its own. This Court will not disturb a child support judgment unless it clearly appears that the trial court abused its discretion. SDCL 15-6 52(a); *Smith v. Olson*, supra; *Peshek v. Peshek*, supra. Since the trial court has great latitude when ruling on this type of issue, *Ulver*, supra, *Weygand*, supra, and inasmuch as it held that appellee's reduced economic worth constituted a sufficient change in circumstances to cause a modification of future child support payments, we are obligated to give judicial deference to the trial court's ruling. We thus hold that the trial court did not err in finding a substantial and material change in appellee's situation.

The judgment is affirmed.

All the Justices concur.