Bonnie D. HOY, Plaintiff and
Appellant,

v.

John M. HOY, Defendant and Appellee.

No. 15020.

Supreme Court of South Dakota.

Considered on Briefs Feb. 10, 1986.

Decided July 30, 1986.

James C. Roby, of Green, Schulz & Roby, Watertown, for plaintiff and appellant.

Roger W. Ellyson, Watertown, for defendant and appellee.

HERTZ, Acting Justice.

Appellant Bonnie D. Hoy (Bonnie), appeals from the trial court's second Amended Judgment and Decree of Divorce. We affirm in part, reverse in part and remand.

Bonnie and the appellee John M. Hoy (John), were married in Watertown, South Dakota, on February 7, 1969. Two children were born to these parties. Presently, neither child has reached the age of majority. Bonnie commenced this divorce action on January 20, 1983. On June 18,

1984, the trial court entered its Judgment and Decree of Divorce which awarded a divorce to each party, provided Bonnie with custody of the minor children, and valued and divided the marital property. John was given visitation rights and was ordered to pay child support.

The original decree specifically awarded Bonnie exclusive possession of the parties' Watertown home until 1990, at which time it will be sold and the proceeds divided equally between them. It further directed that the Clark County farmland (farmland), that Bonnie inherited from her father and which was denominated a divisible marital asset, should be sold immediately with the proceeds delivered to John. The decree ordered John to pay all of the parties' debts with the money he would receive from the farmland sale. It also ordered him to pay $100 per month per child for the children's support.

The trial court entered its first Amended Judgment and Decree of Divorce on July 31, 1984. The amended decree was practically identical to the original one and it reaffirmed, among other things, John's obligation to pay the parties' debts. However, it also specified that John deposit $4,800 of the proceeds from the farmland sale into an interest-bearing escrow account to assure future child support payments. The trial court further imposed a lien on John's one-half interest in the Watertown residence as additional security for the children's support. Neither party appealed from the original or first amended decree of divorce.

Following a hearing, the judgment was again modified by the trial court on May 8, 1985, by entry of its second Amended Judgment and Decree of Divorce. It is from this second modification that Bonnie now appeals.

The trial court considered three petitions at the hearing on March 18, 1985. Bonnie's petition for division of proceeds sought reimbursement for a number of bills she paid which were John's obligation under the original and first amended divorce decrees. John's contempt petition sought to hold Bonnie accountable for the manner in which she sold the farmland. His petition for modification sought a reduction in child support, elimination of the escrow account, and it requested that the Watertown home be sold immediately with the proceeds divided equally between the parties.

The trial court declined to hold Bonnie in contempt, and denied John's request for sale of the marital residence. It also allowed Bonnie reimbursement for certain debts, as well as a sum to compensate her for the time Certificates of Deposit (CDs), which Norwest Bank took to offset John's obligations. The trial court further ordered Bonnie to pay the real estate taxes associated with the sale of the farmland, and it denied her repayment for expenses on the Watertown house. The trial court concluded that John sufficiently proved a change in circumstances to warrant elimination of his child support arrearages and the escrow account. It also reduced his current child support obligation to $100 per month for both children. However, the trial court continued the lien imposed upon John's one-half interest in the Watertown house. Bonnie appeals. The property-related issues will be considered together as will those relating to child support.

### Property Division

The trial court must consider equity and the circumstances of the parties when it divides marital property pursuant to divorce. SDCL 25-4-44. This court reviews a trial court's findings of fact under the "clearly erroneous" standard and will overturn a trial court's conclusions of law only when the trial court has erred as a matter of law. *Temple v. Temple*, 365 N.W.2d 561, 565 (S.D.1985). The trial court has broad discretion with respect to property division, and its judgment will not be set aside unless it clearly appears that the trial court abused its discretion. *Id.* In the absence of fraud or other reasons that would apply to any judgment, a divorce decree which divides or allots property is a final and conclusive adjudication and cannot be subsequently modified. *Blare v. Blare*, 302 N.W.2d 787, 789 (S.D.1981); *Holt v. Holt*, 84 S.D. 671, 176 N.W.2d 51

(1970); *Van Diepen v. Van Diepen,* 73 S.D. 366, 43 N.W.2d 499 (1950). Thus, "the division of property in a divorce action is designed to settle with finality the property rights of the parties as of the time of entry of judgment." *Lien v. Lien,* 278 N.W.2d 436, 444 (S.D.1979).

Here, Bonnie sold the Clark County farmland for $24,000 in February of 1985. This sum was $10,000 less than the trial court's original valuation in the judgment dated June 18, 1984. After the realtor deducted all closing costs which included $600 as the seller's share of real estate taxes, Bonnie received net proceeds in the amount of $21,608.45. Instead of delivering the money to John as ordered, Bonnie deposited it into an escrow account and petitioned the court for reimbursement of proceeds.

˙ The trial court allowed Bonnie to be reimbursed in the amount of $552 for debts she paid to Norwest Bank, VISA, J.C. Penney, Montgomery Ward, Medical Arts Clinic, Watertown Mental Health Center, and Dr. Haugen; all of which were John's responsibility under the original and first amended judgments. It further awarded Bonnie $1,251 as compensation for the CDs Norwest Bank took in satisfaction of John's debt. The trial court further found that the $600 in real estate taxes should have been charged to Bonnie since she had received the rents and profits from the farmland prior to its sale. Thus, the trial court ordered Bonnie to retain the total sum of $1,203.00 from the net proceeds of the farmland sale, and then deliver the balance of $20,405.45, (with interest) to John.

Bonnie claims that the trial court's failure to reimburse her for the First Federal mortgage payments, the full face value of the CDs, the real estate taxes associated with the farmland sale, and John's one-half responsibility for the taxes, insurance, and repairs on the Watertown house constituted an impermissible modification of the property division.

### i. Reimbursement

■ In the original and first amended judgments, the trial court ordered John to pay the First Federal Savings & Loan mortgage outstanding on the marital residence from the proceeds he would receive from the farmland sale. However, in the second amended judgment, the trial court refused to reimburse Bonnie in the amount of $1,405.80, for the mortgage payments she made during the time she was trying to sell the farm property.

The trial court rested this decision on a reference to its letter dated November 21, 1984, which was sent to each parties' counsel. This letter, which was sent in response to John's prior motion for contempt, states in part:

... The court awarded exclusive possession of the [Watertown] home to the plaintiff. By plaintiff's being awarded possession of the home, it necessarily follows that plaintiff has the right to rent out the property. It also necessarily follows that with the right to rent out the home, there is an obligation on the part of the plaintiff to make the house payments, taxes, insurance and upkeep and maintenance on the home until the home is eventually sold.

The record shows that this portion of the letter was not incorporated into the trial court's Findings of Fact and Conclusions of Law dated December 12, 1984, which denied John's motion. Moreover, the second amended judgment orders Bonnie to be held solely responsible for the payment of taxes, insurance, and upkeep while in possession of the Watertown home. Nowhere does it state that she is responsible for the mortgage payments. The judgment further states that, "except as specifically amended herein, the court's previous Amended Judgment and Decree of Divorce shall remain in full force and effect." It follows, therefore, that John's obligation to pay the First Federal mortgage was not affected by the second amended judgment, and remains unchanged.

The trial court's reference to the letter as a basis for denying Bonnie reimbursement was an abuse of discretion given the fact that its advisements were never reduced to any order or judgment binding upon these parties. As such, we find that

the trial court was attempting to modify the property division after the decree was entered which is prohibited under the rulings in *Blare, Holt,* and *Van Diepen, supra.* Therefore, we remand this issue with directions to order payment of $1,405.80 to Bonnie as reimbursement for the mortgage payments she made pending the sale of the farmland.

■ Consistent in the original, first, and second amended judgments was the award of the CDs to Bonnie. According to the record, their combined face value amounted to approximately $2,702. Norwest Bank took them to offset John's obligation of $3,502. The trial court reimbursed Bonnie in the sum of $1,251 for the CDs. This amount does not include any earned interest. The record is unclear as to where the trial court obtained this figure. Nevertheless, we find that the trial court abused its discretion in failing to award Bonnie the total combined face value of the CDs plus any earned interest.

John was ordered by the trial court to pay the debt to Norwest Bank out of the proceeds he received from the farmland sale. The trial court specifically found that the delay in the sale of the farm property and its price of $24,000, were not caused by Bonnie's bad faith. In fact, the trial court characterized the sale price as the farmland's "reasonable, fair market value in a depressed market." Inasmuch as Norwest Bank took Bonnie's CDs to satisfy John's outstanding obligation, it follows that she is entitled to the total face amount thereon.

Accordingly, we direct the trial court to reimburse Bonnie in the amount of $1,451 for the three CDs, plus any earned interest thereon.

ii. Real Estate Taxes Associated With Farmland Sale

iii. Expenses Associated With Marital Residence

In its Memorandum Decision dated April 22, 1985, the trial court found the following:

Six hundred dollars ($600) of the proceeds of the sale of the [farm]land was deducted from the sale for taxes which more properly should have been paid by plaintiff since she received the rents and profits from the land prior to its sale and defendant should be given credit for that amount.

■ In the second amended judgment, the trial court ordered Bonnie to be held solely responsible for the real property taxes, insurance, and upkeep on the Watertown house. Although Bonnie and John will share equally in the proceeds from the sale of this residence in 1990, the record indicates that Bonnie currently rents out the house and is the sole recipient of the rents and profits which it generates.

According to 20 Am.Jur.2d *Cotenancy and Joint Ownership* §§ 60 and 62 (1965), an exception to the general rule of contribution from co-tenants for expenses such as taxes and upkeep, is when the co-tenant is out of possession and receives no benefits from the property. The trial court found that John received no income from the farmland pending its sale, nor does he presently receive any rents or profits arising from the rental of the Watertown house. Thus, we affirm the trial court's judgment ordering Bonnie to be charged with the $600 in real estate taxes, and to be held solely responsible for the taxes, insurance, and upkeep of the Watertown residence.*

### Child Support

■ The record reveals that John is over 60 years old, poorly educated, in bad health, and has no other source of income but a Fireman's Pension, from which he receives a check for $523 per month. At the hearing on March 18, 1985, John testified that his assets have been seriously depleted since the time of the divorce. He stated that due to the delay in the sale of

---

* Neither the original or first amended judgment determined whose responsibility the Watertown house expenses would be. As such, we do not find the trial court's subsequent order to be an impermissible modification of the property settlement as discussed *supra.*

the farmland, his car has been repossessed and the dealer is seeking a deficiency judgment of $3,325.89; the entire cash value of his life insurance was used to pay creditors; and the proceeds from the sale of the farmland are now reduced by $10,000 from the trial court's original valuation of $34,-000. Moreover, John testified that he was sued four times by creditors, other than the car dealership, during the period of time for which Bonnie seeks child support arrearages.

John received only four major assets under the divorce decree, to-wit: the proceeds from the sale of the Clark County farmland (pending); the proceeds from the sale of the Watertown house (deferred until 1990); the cash value of his life insurance (borrowed against to pay creditors); and his Chevrolet Impala (repossessed). The only other assets John owned following the divorce were his personal effects, (i.e., clothes and a shotgun), which were valued at $200 and a share of Community Oil stock valued at $20. The record shows that John documented this information with evidence of his assets, debts, and monthly expenses, all of which was admitted at the hearing on March 18, 1985.

Based upon the foregoing, the trial court concluded that a material change of circumstances had occurred since the time of the divorce which was due, in part, to the delay and reduced sale price of the Clark County farmland. The trial court further found that John's modest income, (which was also reduced from the time the decree was entered), coupled with the circumstances surrounding the farmland sale made it impossible for him to pay his child support arrearages, or his current support payment, through no fault of his own. Therefore, the trial court excused the arrearages, reduced John's present child support obligation by half, and vacated the escrow security deposit. However, it reaffirmed the lien imposed upon John's one-half interest in the Watertown house.

Bonnie claims that the trial court erred in finding a substantial and material change

in John's ability to provide support for his children. We disagree.

SDCL 25-4-45 grants the trial court continuing jurisdiction in a divorce action to modify the judgment concerning the support and maintenance of the children. *Jameson v. Jameson*, 306 N.W.2d 240, 242 (S.D.1981); *Blare*, 302 N.W.2d at 791. The "substantial change of circumstances" standard necessary for modification of child custody provisions is not applicable. *Id.* For child support payments to be modified, a change in conditions or circumstances must have occurred since the original child support judgment was entered. *State ex rel. Larsgaard v. Larsgaard*, 298 N.W.2d 381, 384 (S.D.1980). The burden of proving changed conditions sufficient to warrant modification, is upon the party seeking modification. *See: Stach v. Stach*, 369 N.W.2d 132, 136 (S.D.1985).

This court will not disturb an award of child support unless it clearly appears that the trial court abused its discretion. *Straub v. Straub*, 381 N.W.2d 260, 261 (S.D.1986). An award of child support must be reasonable and suitable to the child's present situation in life and the father's present financial means and ability to pay. *Id.* The trial court is empowered with broad discretion in determining whether the change involved justifies a modification of child support payments. *Larsgaard*, 298 N.W.2d at 385.

We held in *Larsgaard* that the trial court had the power to retroactively modify a divorced father's child support payments where his economic situation had sufficiently deteriorated to warrant a partial cancellation of the arrearages. 298 N.W.2d at 384. After entry of the original decree in this case, the father became physically and mentally unable to work which resulted in his diminished earning capacity. *Id.* at 385. In affirming the trial court, we held:

... A trial court must adjudicate upon the realities of the domestic situation at hand and not be totally inflexible with regard to its earlier support judgment.

Were this not so, grave injustices would arise ...

*Id.* at 384. As noted in *Stach, supra,* the *Larsgaard* rationale was followed in *Hood v. Hood,* 335 N.W.2d 349 (S.D.1983); *Singer v. Singer,* 317 N.W.2d 826 (S.D.1982); *Barrett v. Barrett,* 308 N.W.2d 884 (S.D. 1981); and *Jameson, supra. See: Stach,* 369 N.W.2d at 136.

Here, the trial court found that at the time of the original judgment, John was supplementing his pension with income from a janitorial job, and it was anticipated that he would receive $10,000 more from the sale of the farm property. At the time of the hearing, however, John had been forced to quit his job because of poor health and was subsisting exclusively upon his monthly pension check of $523. According to the record, his monthly expenses total $560. As mentioned in *Larsgaard, supra,* a reduction in the payor's income has been held a competent change of circumstances to justify child support modification. 298 N.W.2d at 384. Moreover, John's car had been repossessed, life insurance depleted, and the expected proceeds from the farmland sale substantially reduced at the time of the hearing.

Considering all the evidence which illustrates the financial realities of this domestic situation, we find no abuse of discretion and hold that John sufficiently proved changed conditions to warrant modification. We, therefore, affirm the trial court's judgment cancelling the arrearages, and reducing the current support award to $100 per month for both children.

Nor can we find that the trial court erred by vacating John's obligation to deposit $4,800 in an escrow account as security for future child support. The trial court based this decision upon the reduced proceeds John will receive and his continuing responsibility to pay certain of the parties' debts with this money. We cannot find any abuse of discretion in the trial court's conclusion that John is unable to make the $4,800 payment out of the reduced proceeds. We further note that the trial court continued the lien against John's one-half interest in the Watertown house to ensure child support payments. Given that this lien is still in full force and effect, we find that it provides Bonnie with ample security in lieu of the escrow deposit.

Accordingly, we affirm the trial court's child support modifications as they pertain to cancellation of arrearages, reduction of present support, and elimination of the escrow security deposit.

We reverse and remand with directions to the trial court as follows:

(1) Order the payment of $1,405.80 to Bonnie as reimbursement for the mortgage payments she made pending the sale of the farmland; and

(2) Order the payment in full of the CDs taken by Norwest Bank to offset John's obligation. Bonnie having received $1,251 from the trial court of the total value of the certificates which amounted to $2,702, Bonnie is thus entitled to the balance of $1,451 plus any earned interest thereon.

All the Justices concur.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.