Constance Rae SARVER, formerly
Constance Rae Dathe, Plaintiff
and Appellant,

v.

Norman Lee DATHE, Defendant
and Appellee.

No. 16059.

Supreme Court of South Dakota.

Considered on Briefs Aug. 30, 1988.

Decided April 19, 1989.

Linda Lea M. Viken of Finch, Viken, Viken & Pechota, Rapid City, for plaintiff and appellant.

Bryce A. Flint of Jackley & Flint, Sturgis, for defendant and appellee.

HENDERSON, Justice.

## ACTION/ISSUES

Plaintiff Constance R. Sarver (Sarver) appeals a decision of the Meade County Circuit Court by which her former husband, Norman L. Dathe (Dathe), was awarded a reduction in child support and a federal income tax exemption for their minor son. Sarver alleges circuit court error in four respects:

(1) The circuit court lacked authority to reduce child support in the circumstances of this case;

(2) The circuit court lacked authority to give Dathe the federal income tax exemption;

(3) Sarver was entitled to an award of child support arrearages; and

(4) The circuit court abused its discretion in not awarding attorney's fees to Sarver.

We reject Sarver's first argument on theoretical grounds, but grant her the remedy she seeks by reversing the trial court on Issues 2, 3, and 4. The first two issues are interrelated if not interlocking.

## PROCEDURAL HISTORY

Plaintiff Constance R. Sarver (Sarver) and Defendant Norman Dathe (Dathe) were divorced pursuant to a Judgment and Decree of Divorce, entered by the circuit court for Meade County in February 1979. Under that decree, Dathe was to pay $225 per month in child support for the couple's minor child, Todd. Dathe consistently met his obligations. In July 1986, Sarver filed a Petition for Modification of Child Support with the Department of Social Services (DSS), as provided by SDCL 25–7–7. After an administrative hearing held on July 29, 1986, Dathe's child support payments were increased to $361 per month. Sarver requested rehearing by DSS seeking a further increase on the grounds that DSS had not considered all of Dathe's income. DSS

granted this request and scheduled a new hearing for October 29, 1986.

In the meantime, on October 6, 1986, Dathe, who had not participated in the July hearing, because of lack of notice,[1] filed a motion to show cause in the Meade County Circuit Court seeking, among other things, to set aside the DSS order and have a federal income tax exemption for his son awarded to him. DSS delayed further action, awaiting the outcome of the circuit court's consideration of Dathe's motion. At a hearing on November 3, 1986, the circuit court remanded the matter of child support to DSS, and deferred consideration of other issues until such time as the case came back before it following an administrative hearing.

A second administrative hearing was held on February 2, 1987, after which an order was entered directing Dathe to pay $435.58 per month in child support. The DSS Hearing Examiner based this order on its determination that Dathe's net income was $23,759.05.

Dathe took no action to appeal this order, but filed a Motion for Rehearing with the Meade County Circuit Court on April 22, 1987, asking consideration of, *inter alia*, the matter of the federal tax exemption. Dathe also alleged that a change in circumstances had arisen since the February 1987 DSS hearing in that Dathe had been advised, by his tax preparer, of a loss incurred on his rental properties (the record indicates that this loss was briefly discussed in the administrative hearing, but Dathe did not have his 1986 tax return completed at that time).

After a June 15, 1987 hearing, the circuit court reduced Dathe's child support to $361 per month, based upon its determination that Dathe's monthly income had been reduced from $1,979, in February 1987, to $1,551, a change in circumstances sufficient to warrant the reduction, according to the circuit court. Dathe was not required to pay any alleged arrearages in child sup-

---

1. SDCL 1–26–16 provides: "In a contested case all parties shall be afforded an opportunity for hearing after reasonable notice." Dathe was provided no notice until *after* the first DSS hearing, as notice was sent to an address in a town with no street delivery. DSS did not, on its application form, require Sarver to provide a mailing address.

port, and was awarded the federal income tax exemption. On November 3, 1987, a hearing was held in the circuit court regarding a motion for rehearing filed by Sarver, which resulted in the order, nunc pro tunc October 21, 1987, rejecting Sarver's claims, from which Sarver now appeals.

## DECISION

### No change in circumstances

### Circuit court had authority to reduce child support but not under these circumstances

Sarver argues that the circuit court lacked authority to reduce Dathe's child support because (a) Dathe did not appeal the DSS decision, and (b) there was no change of circumstances or conditions after the DSS hearing.

Dathe's position is that the circuit court properly exercised its statutory authority under SDCL 25-4-45, which he urges must be read in conjunction with SDCL 25-7A-11. SDCL 25-4-45 reads:

In an action for divorce the court may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same.

SDCL 25-7A-11 provides:

An administrative decision or order establishing liability and periodic payments for support is superseded by entry of a subsequent circuit court order establishing support to the extent the circuit court order is inconsistent with the administrative decision or order.

The initial child support level of $225 per month was set by the circuit court in its 1979 decree of divorce and an associated "Property Settlement, Support and Custody Agreement" between the parties. It is settled law that SDCL 25-4-45, cited by

Dathe, grants the trial court "continuing jurisdiction in a divorce action to modify the judgment concerning the support and maintenance of the children." *Hoy v. Hoy*, 391 N.W.2d 685, 689 (S.D.1986). *See also Blare v. Blare*, 302 N.W.2d 787, 791 (S.D. 1981); *Larsgaard v. Larsgaard*, 298 N.W. 2d 381, 383 (S.D.1980) (modification of support agreements can be ordered even if the original judgment was based on a stipulation between the parties).[2] DSS is an agency within the meaning of the Administrative Procedures Act (SDCL ch. 1-26). *See Parsons v. South Dakota Dep't of Social Services*, 314 N.W.2d 863, 864 (S.D.1982). SDCL 1-26-30.2 authorizes appeal in the circuit court from a final decision, ruling, or action of an agency by any party in a contested case. SDCL 1-26-30.3 provides: "Notwithstanding any other provision of law, all appeals authorized by § 1-26-30.1 or § 1-26-30.2 shall be taken and conducted pursuant to the provisions of this chapter." Notice of appeal must be served on the adverse party and agency within 30 days, "or if a rehearing is authorized by law and is requested, within 30 days after notice has been served of the decision thereon." SDCL 1-26-31. No notice of appeal was ever filed or served by Dathe. This Court has held, regarding proceedings revoking a driver's license, that failure to follow statutory guidelines regarding petitions or notices of appeal in reference to SDCL 1-26-31 deprives a circuit court and, in turn, the Supreme Court, of jurisdiction. *Kulesa v. Department of Public Safety*, 278 N.W.2d 637, 638 (S.D.1979). Dathe's motion, however, requested consideration of the child support matter on the basis of a change in circumstances arising after the second DSS hearing in February 1987. This, if true, would bring the matter within the circuit court's jurisdiction under SDCL 25-4-45. *See State v. Dryden*, 409 N.W.2d 648, 651 (S.D.1987). The circuit court, in its findings of fact, specifically determined

---

**2.** Procedural confusion is evident in this case, reflecting the blurred constitutional jurisdictional boundaries between the judiciary and DSS engendered by SDCL 25-7-7. Here, neither party argues that SDCL 25-7-7 is unconstitutional, and both departmental child support orders are

tainted, the first by lack of notice, and the second by the circuit court's error regarding the tax exemption. Therefore, constitutionality of SDCL 25-7-7 is irrelevant to our consideration of this case.

that the action before it was *not* an appeal of an administrative order.

The "material change in circumstances" Dathe referred to was a loss associated with his rental business suffered in 1986, and projected into 1987. The information provided to the circuit court as justification for the change in circumstances was based on data in Dathe's 1986 federal income tax returns, which he did not complete prior to the hearing in February 1987. Documentation was not provided to the hearing examiner, although Dathe was granted extra time to do so. Although Dathe claimed a change in circumstances after the February 1987 hearing, the events upon which the alleged change was based occurred in 1986. Thus, there was no change in circumstances *after* the DSS hearing to justify the circuit court's taking jurisdiction under SDCL 25-4-45, until one considers the status of the federal income tax exemption which was being claimed by both parties.

*Circuit court erred in awarding federal income tax exemption to appellee*

■ The circuit court was faced with the issue of the federal income tax exemption for the parties' child in October 1986, on Dathe's motion to show cause. The circuit court deferred ruling on the income tax exemptions, but referred the case to DSS for determination of child support. This was error, as allocation of this tax exemption affects the financial situation of the parties and constitutes a factor in considering ability to pay child support. These are absolutely interlocking considerations. *See Baird v. Baird*, 760 S.W.2d 571, 573 (Mo.App.1988); *Lorenz v. Lorenz*, 166 Mich.App. 58, 62–64, 419 N.W.2d 770, 772 (1988). The tax exemption question should have been decided at the same time as the child support issue. As DSS is not given statutory authority to allocate federal tax exemptions, the second DSS child support determination was based on a faulty legal premise. In these circumstances, the trial court was inherently mandated to take jurisdiction of this case to decide the tax exemption issue which it had reserved to itself before the second DSS hearing.

■ Dathe was awarded a federal income tax exemption by the trial court for Todd, the parties' minor son residing with Sarver, although 26 U.S.C. § 152(e) provides that, for tax years beginning after December 31, 1984, the custodial parent is to receive the exemption, subject to three exceptions. Two of the three exceptions require written declarations that the custodial parent, or other person contributing support pursuant to a multiple support agreement, that said custodial parent will not claim the child as his dependent. *See* 26 U.S.C. § 152(e)(2), –(3). These exceptions do not apply here, as Sarver has never made such a declaration. The third exception, § 152(e)(4), which was explained in *State v. Dryden*, 409 N.W.2d 648, 652 n. 2 (S.D.1987), applies in cases involving "Qualified pre–1985 instruments." A "Qualified pre–1985 instrument" is "any decree of divorce or separate maintenance or written agreement," executed before January 1, 1985, which expressly allocates a deduction for the child in question to a non-custodial parent who provides at least $600 for support of that child, and which is not later changed in a modification expressly providing that "this paragraph" (the general rule) shall not apply. *See Dryden, id.* This last exception is inapplicable in this case as the 1979 divorce decree and support agreement make no reference to allocation of the exemption for the child and no express modification to the 1979 instruments exist.

As none of the three exceptions to the general rule of Section 152(e) are appropriate to the facts of this case, the circuit court erred in allocating the federal tax exemption to Dathe. "Prior to January 1, 1985, a trial judge could assign IRS exemptions for minor children to either the custodial or noncustodial parent. (Citation omitted.) This is no longer permitted." *Dryden, id.* In so holding, we acknowledge that some state courts have ruled that they have authority to, in effect, override federal tax law by ordering custodial parents to execute an exemption waiver and thus qualify noncustodial parents under 26

U.S.C. 152(e)(2).[3] *See, e.g., McKenzie v. Jahnke,* 432 N.W.2d 556 (N.D.1988). We deem such rationale to be an unconstitutional meddling with Congressional authority granted under the Sixteenth Amendment to the United States Constitution and, therefore, contrary to the Supremacy Clause of the U.S. Const. art. VI, cl. 2. We agree with the position of the Michigan Court of Appeals [4]:

> Since the exception does not apply, defendant, as the custodial parent, is entitled to claim the exemption unless she releases her claim to the exemption in accordance with 26 U.S.C. 152(e)(2). The trial court was without authority to order that plaintiff is entitled to claim the deduction without obtaining defendant's consent. The court could, however, consider which parent had the benefit of the exemption under the amended tax statute and its effect on the parties ability to pay as relevant factors in deciding the amount of the modification, if any, that was justified. Accordingly, on remand, the court should consider the effect of 26 U.S.C. 152 on the child support dispute, but may not decide which party is entitled to the dependency exemption, which must be resolved as a matter of federal tax law.

*Varga v. Varga,* 173 Mich.App. 411, 419, 434 N.W.2d 152, 155–56 (1989). *See also In re Marriage of Vinson,* 83 Or.App. 487, 732 P.2d 79, 84 (1987), *rev. denied,* 303 Or. 332, 736 P.2d 566 (1987); *Fullmer v. Fullmer,* 761 P.2d 942, 950 (Utah App.1988).

*Child support arrearages should now be granted and proper child support established*

▮▮▮ As to child support arrearages, we deem the initial DSS order invalid, as it was issued after a "hearing" at which Dathe was given no opportunity to appear.

SDCL 1–26–16 requires reasonable notice, and none was given. The trial court, through deferring decision on the tax exemption, rendered the second DSS order invalid. There is still, as of this appeal, no determination of Dathe's child support which reflects the proper allocation of the tax exemption. This must be corrected.

Given the jurisdictional confusion of this case, we deem it appropriate and equitable for the trial court to award arrearages, without interest, retroactive to the time the circuit court entered the fray in October 1986. SDCL 25–7–7.3, which provides that child support arrearages cannot be modified except for periods in which there is pending a petition for modification, has no application to these particular facts. The trial court, for all practical purposes, had the child support issue under consideration from October 1986 until it finally deprived Sarver of her tax exemption, by denying her motion for rehearing on November 3, 1987. Dathe had no reason to submit a petition for modification, as the trial court never relinquished control of the issues raised in Dathe's motion to show cause. The practical effect, therefore, is that SDCL 25–7–7.3 does not apply to these facts. Considering the amount of confusion and delay generated by the trial court's deferring on issues only it could decide, we direct the trial court to reconsider its denial of arrearages in conjunction with its redetermination of child support. We believe this would uphold equitable principles under these circumstances.

*Attorney's fees and costs awarded*

We determine that the denial of $500 attorney's fees at the trial court level was error. Appellate attorney's fees are awarded in the sum of $1,500. Allowable

**3.** Reliance on *Niederkorn v. Niederkorn,* 616 S.W.2d 529, 533 (Mo.App.1981), by Justice Sabers in his special concurrence, is misplaced, as federal tax law allowed such awards in 1981, and the trial court, in *Niederkorn* was in compliance with the Internal Revenue Code. *In re Marriage of Lovetinsky,* 418 N.W.2d 88 (Iowa App.1987), is also irrelevant. It dealt with a tax exemption stipulation, and contained no reference to the federal tax code.

**4.** The Sixteenth Amendment provides: "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration."

costs, in addition to attorney's fees, will be awarded by the Clerk of this Court.

Affirmed in part, reversed in part.

WUEST, C.J., and MILLER, J., concur.

MORGAN and SABERS, JJ., concur specially.

MORGAN, Justice (concurring specially).

I concur in the majority opinion but I write to concur specially in the disposition of the issue on allocation of the income tax dependency exemption, hereafter the exemption.

I recognize that there is a split of authority among the various state courts that have decided this issue. Both sides agree that the adoption of 26 U.S.C. § 152(e), hereafter the amendment, has changed the law to provide for allocation of the exemption to the custodial parent *unless* that parent signs a waiver releasing the exemption to the noncustodial parent. The division is actually over the authority of the courts, or the means by which the courts can coerce the custodial parent to sign that waiver.

The authorities typified by the North Dakota decisions would distinguish the rights of the federal government to levy taxes from the rights of the state courts to grant divorce decrees, divide property, assign custody of children and provide for their support. They consider the provision for support to include the control over the parties so as to coerce, if necessary, the execution of the waiver. The authorities typified by the Michigan decisions, take the position that the federal law has now *removed* the right previously given, to allocate the exemption. However, they hastily acknowledge the right of the trial court to take the allocation into consideration when setting the level of child support. This is perhaps a subtiler form of coercion, but coercion nonetheless.

As yet we have no indication how the Internal Revenue Service views those waivers executed under the pains and penalties of punishment for contempt of court. They well may disregard them as outside the contemplation of the statute. On the other hand, I find some support for the Michigan view in the minutes of the House Committee considering the proposed amendment.

> For this exception to apply, the custodial parent will have to sign a written declaration that he or she will not claim the child as a dependent for the year, and the noncustodial parent will have to attach the written declaration to his or her tax return. That declaration may be made for one or more specified calendar years. The parties may make a permanent declaration a copy of which the noncustodial parent attaches to each year's return, or the declaration may be made by the custodial spouse annually *in order to better insure the receipt of child support payments*

H.R. No. 432, 98th Cong., 2d Sess., pt. 2, reprinted in 1984 U.S.Code Cong. & Admin. News 697, 1140–41.

The footnote in *State, Fall River County v. Dryden*, 409 N.W.2d 648 (S.D.1987), cited by the majority, is not particularly persuasive to me. I think that it was obiter dicta inasmuch as the amendment was not at issue. The real issue in *Dryden* was the amendment of a prior decree to give the exemption to mother, *the custodial parent*, as opposed to father, the noncustodial parent. The affirmation of the trial court hinged on the factual determination that father had a bad history of making the support payments and that mother had been required to make payments for health care over and above the insurance coverage. I do not believe that a policy determination as to which of two lines of authority this court is going to follow should be relegated to a footnote.

I therefore opt to support the Michigan line of cases. I would further note that the last legislative session amended SDCL ch. 25–7 so as to add a factor for deviation from the schedule for support obligation as follows: "(3) Whether the federal income tax dependent deduction for such minor child is allocated to the benefit of the support obligor or the custodial parent[.]" 1989 S.D.Sess.L. ch. 220, effective 7–1–89.

SABERS, Justice (specially concurring).

I write specially to point out that trial courts have inherent authority to order the custodial parent to execute waiver forms assigning income tax dependency exemption to the non-custodial parent. *McKenzie v. Jahnke,* 432 N.W.2d 556 (N.D.1988); *Fleck v. Fleck,* 427 N.W.2d 355 (N.D.1988). This is so because the tax exemption is part of the child support issue. *See In re Lovetinsky,* 418 N.W.2d 88, 90 (Iowa 1987); *Fudenberg v. Molstad,* 390 N.W.2d 19, 21 (Minn.1986) (awarding tax exemption will increase income to which support guidelines apply); *Niederkorn v. Niederkorn,* 616 S.W.2d 529, 533 (Mo.Ct.App.1981) (tax exemption award is nearly identical in nature to an order that the other party pay a sum equal to the value of the exemption as child support); *Cross v. Cross,* 363 S.E.2d 449, 459 (W.Va.1987) (circuit court may allocate dependency exemption for tax purposes as part of decision about child support awards).

The trial court has the power to reduce the amount required to be paid under the guidelines by a sum equal to the value of the exemption as child support in the event of a refusal by the custodial parent to agree or execute the necessary waiver. SDCL 25–7–7. This power stems from the direct effect the exemption has on the "[f]inancial condition of the parents" under subsection (1) relating to deviations from the guidelines and "[i]ncome taxes withheld" under subsection (1) relating to deductions from monthly gross income. SDCL 25–7–7.

This is not a question, as the majority claims, of "overrid[ing] federal tax law" or "unconstitutional meddling with Congressional authority." It is simply a matter of determining and preserving the most resources in situations of obvious limited resources.