Charlotte KIER, Plaintiff and Appellee,

v.

**Gordon Allen KIER, Defendant and Appellant.**

No. 16645.

Supreme Court of South Dakota.

Considered on Briefs Nov. 29, 1989.

Decided April 18, 1990.

Glenn A. Fingerson of Fingerson, Severson & Nelson, Huron, for plaintiff and appellee.

Thomas M. Frankman of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellant.

TIMM, Circuit Judge.

Gordon Kier appeals an award of child support arrearages, interest and attorney's fees. We affirm in part, reverse in part and remand.

## FACTS

Charlotte and Gordon Kier divorced in 1973. Custody of their only child, Tracy, was granted to Charlotte subject to Gordon's rights of reasonable visitation. Pursuant to the parties' agreement, the circuit court amended their original divorce decree in 1982. Gordon's monthly child support obligation was increased to $375 and he also agreed to pay certain college expenses for Tracy.

On September 9, 1988, Charlotte initiated a show cause/contempt proceeding seeking an award of child support arrearages and an interpretation of the parties' agreement regarding payment of Tracy's college expenses. Gordon responded on September 13, 1988, with a motion to dismiss alleging that all required child support payments had been made. However, on November 15, 1988, Gordon filed an affidavit admitting that he had not made certain child support payments. He defended his nonpayment by alleging that he had been relieved of his support obligation through an agreement with Charlotte.

A hearing took place on November 21, 1988. Evidence was received consisting of the affidavits of the parties, the affidavit of Connie Kier (Gordon's wife) and the affidavit and oral testimony of Tracy. The trial court found that Charlotte had returned Gordon's June 1984 child support payment and that he did not make or tender ten subsequent monthly payments. The trial court also found that there was no agreement between the parties relieving Gordon of his obligation to make these payments. Additionally, the trial court found that Tracy was in her senior year of college and that Gordon had paid her expenses for room, board, tuition and books, but that he had paid no other costs incurred by Tracy in obtaining her college education.

Based upon these findings, the trial court held that Gordon owed ten child support payments of $375 each plus interest but that he did not owe the payment returned by Charlotte in June 1984. The trial court also held that Gordon was not obligated by the amended divorce decree to pay for Tracy's college expenses other than her room, board, tuition and books. Finally, Gordon was required to pay the portion of Charlotte's attorney's fees related to the collection of support arrearages.

## CHILD SUPPORT ARREARAGES

Gordon attacks the trial court's finding that the parties did not have an agreement terminating his child support obligation. Our review of the trial court's finding is made under the clearly erroneous standard. SDCL 15-6-52(a). In applying this standard, we review all the evidence and overturn a finding only if we are left with a definite and firm conviction that a mistake has been made. *Hilbrands v. Hilbrands*, 429 N.W.2d 750 (S.D.1988).

The trial court was faced with testimony from Gordon that he had made all required child support payments and that he did not make the ten payments following the return of his June 1984 check because Charlotte told him, "keep the check, you're not seeing Tracy." Gordon also testified that his relationship with Tracy was strained and that he had made attempts to see Tracy, but, "most of the time," was refused visitation by Charlotte. Finally, Gordon

testified that he did not visit Tracy during the period of missed payments, "except for a very few times."

On the other hand, Charlotte represented that she returned the June 1984 support check because she had heard that Gordon needed the money for a tax obligation. She also denied that there was any agreement relieving Gordon of his support obligation in exchange for his relinquishment of visitation rights. Tracy supported her mother's version of the facts. Despite Gordon's contention that he had not needed the support money, Tracy testified that she informed Charlotte that Gordon needed the money in June of 1984. Both Tracy and Charlotte claimed that Gordon exercised his visitation rights in 1984 and 1985.

Based upon our review of the foregoing facts and specifically noting Gordon's inconsistent and equivocal statements, we conclude that the trial court's finding that there was no agreement between the parties relieving Gordon of his support obligation is not clearly erroneous.

Gordon also attacks the award of support arrearages by contending that laches, waiver and estoppel prevented such an award. These affirmative defenses were not set forth in affidavits responding to Charlotte's motion. Gordon first raised these defenses in his proposed findings of fact and conclusions of law and they were rejected by the trial court.

Laches, waiver and estoppel are affirmative defenses which may not be relied upon at trial unless they are affirmatively pled in response to a preceding pleading. SDCL 15–6–8(c). In *Otten v. Otten*, 245 N.W.2d 506 (S.D.1976), we clearly established that the duty to plead affirmative defenses applies to affidavits made in response to orders to show cause for failure to pay court ordered child support. "Under South Dakota practice the affidavit upon which an order to show cause is issued in a contempt action is treated as the complaint and the affidavit of the defendant as the answer...." *Id.* at 508. By failing to affirmatively plead these defenses in his responsive affidavit, Gordon waived them. *Oesterling v. Oesterling*, 354 N.W.2d 735

(S.D.1984). Therefore, the trial court correctly refused to consider them.

Charlotte, by notice of review, contends that the trial court erred in relieving Gordon of his June 1984 support obligation. We agree.

In 1987, the South Dakota legislature restricted the authority of trial courts to retroactively modify past due child support obligations. SDCL 25–7–7.3; SDCL 25–7–7.4. Only those payments which accrue while a petition for modification is pending may now be modified, but only from the date that notice of hearing on the petition has been given to the interested parties. *Id.* In *Vellinga v. Vellinga,* 442 N.W.2d 472 (S.D.1989), we determined that the legislature intended that these restrictions be given retroactive application. Therefore, under the circumstances of this case, we conclude that the trial court exceeded its authority in refusing to include Gordon's June 1984 support obligation in its award of arrearages.

## . INTEREST

An award of interest on support arrearages is a matter of judicial discretion. *See* SDCL 25–7A–14. *See also, Sarver v. Dathe,* 439 N.W.2d 548 (S.D.1989). Gordon asserts that the trial court abused its discretion by awarding interest on the arrearages. He claims that he quit paying support because Charlotte led him to believe that his obligation had terminated. He cites *Myhre v. Myhre,* 296 N.W.2d 905 (S.D.1980) in support of his position. In *Myhre* we held that, "[w]hen circumstances exist which support a good faith termination of alimony payments, equity refuses to allow the recipient to collect any interest on the past due support installments." *Id.* at 909. We agree that this principle applies equally in appropriate cases involving child support arrearages.

*Myhre,* however, is distinguishable from the case before us. The parties in *Myhre* stipulated at the time of their divorce that alimony would terminate upon remarriage of the obligee. After the divorce, the obligee moved in with a Mr. Quint, represent-

ing to others that she and Mr. Quint were married. As a result, the obligor gave his ex-wife written notice that he would no longer pay alimony due to her "remarriage."

In the present case, the parties had no agreement relating to termination of child support. There were no representations made by Charlotte of facts which, if true, would have supported a conclusion by Gordon that he need not make further payments. The only fact from which such an inference could have been drawn was Charlotte's return of the June 1984 support check. This did not provide a strong basis in fact or reason for Gordon's inference that his support obligation had ended. It does not rise to the level of yielding a "good faith" belief on Gordon's part that his support obligation was terminated. We find no abuse of discretion in the trial court's award of interest.

### AGREEMENT

Also by notice of review, Charlotte assigns error to the trial court's interpretation of the parties agreement obligating Gordon to pay certain college expenses for Tracy. The trial court held that Gordon was only required to pay expenses for her room, board, books and tuition. Charlotte contends that the agreement also required Gordon to pay $470 per month for clothing and other personal expenses. Charlotte further contends that the agreement required Gordon to pay expenses related to Tracy's search for employment during her senior year.

■ In determining the proper interpretation of an agreement incorporated into a divorce decree, a court must seek to ascertain and give effect to the intention of the parties. *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985); *Johnson v. Johnson,* 291 N.W.2d 776 (S.D.1980). In determining the intention of the parties, a court must look to the language that the parties used. *Id.* A court can also consider the construction actually placed on the agreement by the parties as evidenced by their subsequent behavior. *Malcolm, supra; Huffman v. Shevlin,* 76 S.D. 84, 72 N.W.2d 852 (1955).

■ The agreement provided that Gordon was to pay, "all of the regular costs in [Tracy's] obtaining a college education to the level of an undergraduate degree...." From Tracy's enrollment as a college freshman through the first semester of her senior year, Gordon paid for her room, board, books and tuition. Given the language of the agreement and Gordon's expenditures pursuant thereto (unchallenged until Tracy's senior year), we agree with the trial court's interpretation that "regular costs" of college means room, board, books and tuition. There is nothing in the language of the agreement nor was there anything in the actions of the parties manifesting an intention by them that clothing expenses, costs of travel, and other "employment opportunity" expenses be paid for by Gordon.

### ATTORNEY'S FEES

Gordon claims that the trial court erred in awarding attorney's fees to Charlotte. Charlotte, by notice of review, claims that the trial court inaccurately determined the portion of attorney's fees attributable to recovery of support arrearages.

■ An award of attorney's fees in a proceeding to enforce the child support provisions of a divorce decree is proper if warranted. SDCL 15–17–7. *See also, Sarver, supra.* As in the original proceeding, the award rests in the sound discretion of the trial court and will not be overturned on appeal absent an abuse of that discretion. *Garnos v. Garnos,* 376 N.W.2d 571 (S.D.1985).

In determining whether to award attorney's fees, a trial court must first consider what constitutes a reasonable fee. *Prentice v. Prentice,* 322 N.W.2d 880 (S.D.1982); *Lien v. Lien,* 278 N.W.2d 436 (S.D.1979). Second, the court must decide what portion of the fee, if any, should be allowed as costs to be paid by the opposing party. *Id.* In reaching this decision, a court should consider the property owned by each party, their relative incomes, whether the property of the parties is in fixed or liquid assets, and whether the actions of either party

unreasonably increased the time spent on the case. *Id.*

 The trial court considered all of the above factors and based its award on its finding that Gordon, an orthodontist, was in a much better financial position than Charlotte, who had returned to college to pursue a doctorate degree. Based upon the billing statements submitted by Charlotte's counsel, the trial court also separated, as best it could, those fees incurred in pursuit of arrearages from those related to the college expense issue. We conclude that the trial court did not abuse its discretion in awarding Charlotte $1,326.81 of the $2,859.57 requested.

### CONCLUSION

We reverse and remand that portion of the trial court's decision disallowing the June 1984 support payment as part of the award of arrearages and affirm the trial court on all other issues.

WUEST, C.J., and HENDERSON and MILLER, JJ., concur.

MORGAN, J., concurs in part and dissents in part.

TIMM, Circuit Judge, for SABERS, J., disqualified.

MORGAN, Justice (concurring in part and dissenting in part).

I concur in all respects except with regard to the notice of review issue on the "returned" June support check. I would affirm the trial court on that issue also.

The statutes, SDCL 25–7–7.3 and SDCL 25–7–7.4, do not say that the obligee parent cannot modify a payment. Charlotte had the payment in hand and for whatever reason, not attributable to any misconduct on the part of Gordon, she returned it. I am also troubled by the allowance of interest on the back payments. Granted that Gordon failed to properly raise the affirmative defenses of laches, waiver and estoppel on the issue of the back payments themselves, but I think that the fact that Charlotte waited until a considerable amount of arrearages had accumulated before seeking

to enforce the agreement can be considered on the equitable aspect of allowance of interest. I think that the trial court could well have denied interest on that basis but, not having done so, I cannot say that it was a clear abuse of discretion on its part; so, I reluctantly join in the affirmation of that issue.