Janet SHOOP, Plaintiff and Appellee,

v.

**Ellis John SHOOP, Defendant and Appellant.**

No. 16890.

Supreme Court of South Dakota.

Considered on Briefs May 21, 1990.

Decided Aug. 29, 1990.

Reed C. Richards of Richards & Richards, Deadwood, for defendant and appellant.

Thomas E. Brady of Richards, Hood & Brady, P.C., Spearfish, for plaintiff and appellee.

SABERS, Justice.

John Shoop appeals a decision denying his motion for change of custody, or, in the alternative, change in his child support obligation.

### Facts

John and Janet Shoop were married in 1979 and divorced in 1987. Two children were born during the marriage, Justin on August 20, 1979, and Joshua on March 19, 1983. By stipulation, the divorce decree provided for joint legal custody of the children with physical custody in Janet. John agreed to pay $500 a month in child support.

Janet's boyfriend lived with her and the children from May 1, 1988, through May 20, 1989. As a result of this relationship, Janet became pregnant and gave birth to another son.

In February of 1989, John stopped making child support payments. Consequently, in April of that year, Janet started con-

tempt proceedings against him. The following month, the court entered judgment of contempt against John, requiring him to pay all accrued child support by June 15 and execute a wage assignment.

Shortly after Janet started the contempt proceedings, John moved for change of custody, or, in the alternative, modification of his child support obligation. John claimed change of custody was warranted due to Janet's live-in relationship with her boyfriend and the child born out of wedlock. A hearing was held on July 24, 1989, and the court denied both motions, announcing its decision on August 10. The court concluded that the best interests of the children were served by continuing the present custody arrangement. The court supported its decision by finding that: "As a single parent, working part-time, [Janet] has done a reasonably good job of caring for the children." According to the court: "The children are in generally good health and it appears that [Janet] has for the most part attended to their medical needs." The court further found that:

> [Janet] has provided a good, appropriate, suitable and apparently a stable home for the children. To now change custody under the current circumstance would disrupt the children and their stability, separate them from their step-brother with whom they have a very good and loving relationship, separate them from their friends, classmates, and school system in which they are accustomed, and special pre-first schooling program for Joshua.

In contrast, the court found John's proposed living arrangements unacceptable:

> [John] proposes that these children be placed with him in a home in which the accommodations have not been described or explained to this court with the exception that it [is] somewhere in the country and there is no running water. When [John] does exercise visitation, he takes the children to cousins or relatives and apparently does not use his home, which suggests to this court that in fact it is inappropriate or otherwise unsuitable at least for any long-term custody relationship.

John's commitment to the children is also unclear. As the court explained:

> Between February and April, 1989, [John] saw the children on one occasion and had little if any other contact during that time period. This caused stress to the children because they did not understand why their father had suddenly stopped visiting them. Justin's teacher reported to [Janet] that Justin seemed withdrawn and apparently felt abandoned because of lack of contact with his father. Joshua asked if his father was dead or what.
>
> Although [John] has had joint legal custody of the children, he has made little if any effort to be involved in either school or organized recreational activities.

The court also found that "[a]lthough [John] complains of [Janet's] relationship with [her boyfriend], in fact [John] maintained on occasion a sleeping arrangement with his girlfriend in the presence of the children." In short, John's conduct "is nothing different than that of [Janet] to which [John] objects."

The court also determined that the current child support amount was consistent with statutory guidelines and provided John visitation rights every other weekend, Christmas Day, Memorial Day weekend, the Fourth of July, and two weeks during the summer. Janet was awarded a judgment against John for attorney fees, costs, and expenses, totalling $1,792.07. John appeals, claiming the court erred on custody, child support, visitation, and attorney fees.

### Scope of review.

■ Janet claims John's submission to the court of his objections to Janet's proposed findings of fact was untimely, and, as a result, the scope of our review is limited. The procedure for submission of proposed findings is governed by SDCL 15–6–52(a), which provides, in part:

> The court *may* direct counsel for the prevailing party to prepare findings and counsel shall, within ten days after announcement of decision, *unless other-*

*wise ordered,* prepare, serve and submit to the court with copies to opposing counsel, proposed written findings of fact and conclusions of law together with the proposed judgment or decree.

*The court shall not sign any findings therein prior to the expiration of five days after service of the proposed findings* during which time the parties may in writing submit to the court and serve on their adversaries their objections or additional proposals. Thereafter the court shall make or enter such findings and conclusions as may be proper.

(emphasis added). The late filing of proposed findings or objections to an opponent's proposed findings limits this court's review on appeal to "whether the findings of fact support the conclusions of law and judgment." *GMS, Inc. v. Deadwood Social Club, Inc.,* 333 N.W.2d 442, 443 (S.D. 1983); *accord Burke v. Lead–Deadwood Sch. Dist. No. 40–1,* 347 N.W.2d 343 (S.D. 1984). As a result, "the facts are considered conclusive and may not be challenged." *Massey Ferguson Credit Corp. v. Bice,* 450 N.W.2d 435, 444 (S.D.1990).

■■■ John did not serve his objections and proposed findings until after the court issued its findings of fact and conclusions of law. In spite of this late service, John suggests that he should not be penalized for his tardiness because he claims Janet also violated SDCL 15–6–52(a) by not submitting her proposed findings within ten days after the court announced its decision. However, that requirement only applies when the court *directs* the prevailing party to submit findings and does not specify a filing schedule. Here, the court merely stated that counsel *"may"* propose findings. Thus, the ten-day requirement was not applicable to Janet. On the other hand, the five-day response requirement applies to John. Once proposed findings are served, the court is prevented from issuing its findings for only five days, during which time opposing counsel must submit any objections or additional proposals. Since John failed to meet this requirement, his objections are too late to indicate disagreement with the court findings and our scope of review is accordingly restricted to

determining whether the findings of fact support the conclusions.

## 1. *Custody*

■■■ John claims the court abused its discretion in failing to award him physical custody of the children due to Janet's relationship with her boyfriend. When custody is not contested in a divorce proceeding, the parent seeking a subsequent change of custody has the burden of proving by a preponderance of the evidence that the best interests and welfare of the children require a change of custody. *Olson v. Olson,* 438 N.W.2d 544 (S.D.1989); *accord Schmidt v. Schmidt,* 444 N.W.2d 367 (S.D. 1989). When determining what is in the best interests of the children, the court is to consider the temporal, mental, and moral welfare of the children. However, immoral conduct by one parent does not automatically render that parent unfit to have custody of the children and require an award of custody to the other parent. *Williams v. Williams,* 425 N.W.2d 390 (S.D.1988). The trial court has broad discretion in resolving claims for child custody modification, and we will reverse only upon a showing of an abuse of discretion. *Nauman v. Nauman,* 445 N.W.2d 38 (S.D.1989).

John claims the live-in relationship Janet had with her boyfriend is immoral and mandates a change of custody. He cites numerous decisions from other jurisdictions in which the custodial parent was living with a boyfriend or girlfriend and change of custody was ordered. John fails to recognize, however, that a change of custody cannot be based upon the conduct of only one parent. Custody will be changed only if it is shown by a preponderance of the evidence that the children's best interests require such a change. To make this determination it is necessary to consider the overall conduct and abilities of both the custodial and the non-custodial parent. Even if the custodial parent engages in immoral conduct, that parent may still provide better overall care for the children than the non-custodial parent.

■ Given the trial court's findings of fact, which we are bound to consider conclusive, we cannot say the court abused its discretion in refusing to order a change of custody. John complains of Janet's live-in relationship with her boyfriend, yet he maintained on occasion a sleeping arrangement with his girl friend in the presence of the children. Moreover, he offers unacceptable living arrangements for the children and his commitment to the children is questionable. Janet, on the other hand, "has provided a good, appropriate, suitable and apparently stable home for the children." Under the conclusive findings of fact, it is evident the court did not abuse its discretion in concluding that the best interests of the children require that physical custody remain with Janet.

■ Finally, John claims the court abused its discretion by failing to question the children regarding their view of the custody arrangements. We have consistently held that the decision whether to consider a child's opinion about custody is left to the court's discretion. *See Isaak v. Isaak,* 278 N.W.2d 445 (S.D.1979); *Hansen v. Hansen,* 327 N.W.2d 47 (S.D.1982). In fact, the statutory authorization for such a procedure is permissive rather than mandatory. SDCL 30–27–19(1); *Isaak, supra.* The court should exercise its discretion to obtain further information when the evidence presented by counsel does not assure that the children will not be placed, or left, "in surroundings seriously detrimental to their well-being." *Williams, supra* at 393. Under the facts of this case, we cannot say the court abused its discretion. John points to no additional information the children could offer the court, nor is there any indication that the children's surroundings are seriously detrimental to their well-being. Consequently, we support the court's decision not to push the children into the dispute between their parents.

### 2. *Child support.*

John claims the court improperly calculated the amount of child support he should pay. In *Johnson v. Johnson,* 451 N.W.2d 293, 296 (S.D.1990), we stated: "Current child support should be based on the new guidelines of SDCL 25–7–6.2; any deviation from these guidelines must be based on the factors listed in SDCL 25–7–6.10."

John contends that his child support obligation should be $415 a month, based upon his claim that he earns about $25,000 a year and Janet earns about $5,000 a year. Janet, on the other hand, claims that John earns more than $25,000 a year and she earns less than $5,000 a year. Using Janet's figures, John's child support obligation under SDCL 25–7–6.2 would be within $3.00 of the current amount.

■ The court evidently accepted Janet's figures since it concluded "that the child support award of $500 per month ordered in the original decree of divorce is consistent with the new guidelines." John offers no argument as to why his figures should be accepted over Janet's. As a result, we cannot say the court was clearly erroneous in accepting her figures, and, as its determination is consistent with the statutory guidelines, we uphold it.

### 3. *Visitation*

■ Visitation privileges are left to the discretion of the trial court and will not be reversed absent a clear showing of abuse of discretion. As we stated in *Nauman v. Nauman,* 320 N.W.2d 519, 521 (S.D.1982): "Trial courts may allow a noncustodial parent any visitation that is reasonable 'under such conditions or restrictions as the trial court in its wisdom may impose.'" (quoting *Larson v. Larson,* 70 S.D. 178,180, 16 N.W.2d 307, 308 (1944)). In *Nauman,* we upheld a visitation schedule granting the non-custodial parent visitation rights of one weekend a month, alternating holidays, and one month during the summer.

John claims the court established an overly restrictive visitation schedule. Although the visitation schedule may be more restrictive than desired by John, it is similar to the schedule in *Nauman,* and the court was within its discretion in setting the visitation schedule.

#### 4. *Attorney fees.*

■ The allowance of attorney fees in domestic relations cases rests in the sound discretion of the court and will not be reversed without a showing of a clear abuse of that discretion. *Schmidt, supra.* In exercising its discretion, a court must follow a two-step procedure. *Kier v. Kier,* 454 N.W.2d 544 (S.D.1990). First, the court must determine what constitutes a reasonable attorney fee. *Id.* Second, the court must decide what portion of that fee should be paid by the opposing party. *Id.* This second step requires consideration of "the parties' relative worth, income, liquidity, and whether either party unreasonably increased the time spent on the case." *Gross v. Gross,* 355 N.W.2d 4, 9 (S.D.1984).

■ John raises several objections to the court's award of attorney fees to Janet. First, he claims that attorney fees cannot be awarded in a custody modification case because such a case does not fall within the scope of the statutory authorization for awarding attorney fees. SDCL 15–17–7. However, we held that SDCL 15–17–7 allows the award of attorney fees in a child custody modification case. *Pribbenow v. Van Sambeek,* 418 N.W.2d 626 (S.D.1988).

■ John objects to the award of attorney fees because he claims the fees were not properly requested. He contends he had no notice that Janet was seeking an award of attorney fees. Attorney fees may be awarded only "upon compliance with procedural due process and fundamental fairness." *Brennan v. Brennan,* 88 S.D. 541, 543, 224 N.W.2d 192, 193 (S.D. 1974). This requires proper application for the fees and notice of the request to the defendant. *Id.* In a post-hearing letter memorandum to the court dated July 27, 1989, Janet requested attorney fees, and a copy of the memorandum was served upon John. In addition, an itemization of the fees was introduced at the hearing. As a result, John knew Janet was requesting attorney fees and he had sufficient opportunity to respond to the request. Such procedure does not deny procedural due process or fundamental fairness.

■ John claims the attorney fees submitted by Janet are unreasonable and excessive. The court found that Janet "properly incurred such fees and costs." Accepting this finding as conclusive, we have no basis for reversing the court's determination that the fees submitted by Janet were reasonable.

■ Likewise, we find no basis for reversing the court's determination that John should pay Janet's attorney fees. The court found that: "[Janet] does not have nor shall she foreseeably have the ability to make payment of such fees and costs," but "[John] does have the economic ability to make payment...." Therefore, in view of the parties' financial situation as found by the court, we cannot say the court abused its discretion in awarding Janet attorney fees from John.

■ Janet also requests that she be awarded appellate attorney fees. Her motion is accompanied by an affidavit itemizing her fees and costs. Based upon the foregoing analysis, Janet is entitled to an award of appellate attorney fees in the amount of $1,000. *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985).

WUEST, C.J., and MORGAN, J., concur.

HENDERSON and MILLER, JJ., dissent.

HENDERSON, Justice (dissenting).

This is another erosion of recent precedential vitality. I dissent on the custody issue.

The trial judge did not interview the children and obtain their viewpoints. He did not order a home study. With respect to the latter, this is a classic example of disregarding an important decision in our court, namely *Williams v. Williams,* 425 N.W.2d 390 (S.D.1988). If we do not honor our words and holdings, who will?

The majority opinion does not set forth the facts. In doing so, it covers up this mother's harmful conduct to these children. Mother's live in boyfriend impregnated her; he was an alcoholic; mother and live in

boyfriend slept together, in presence of children; he had serious mental problems; he cannot hold a job for any length of time; he beat the two children and mother tolerated it (mother admitted this); and she testified that her amorous conduct to this live in boyfriend was not harmful to the children. Father deplored all of this ribald conduct and quit supporting wife; soon he was in contempt. The trial court was extremely biased against him. This is why he lost his case on custody. The findings of fact are clearly erroneous. In re *Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). And the conclusions of law are against the law. *Permann v. South Dakota Dept. of Labor, Unemployment Ins. Div.*, 411 N.W.2d 113 (S.D.1987).

Justice Miller is authorized to state that I join his dissent.

MILLER, Justice (dissenting).

Although I agree with much of what the majority says, I dissent on the custody issue. The majority's analysis of the trial court's findings and conclusions is correct, as far as it goes, but fails, I suggest, to make the appropriate ultimate determination because the trial court had insufficient evidence before it to make this important decision.

There was absolutely no objective testimony from a grandparent, teacher, social worker, counselor, physician, or *any* professional to give the court guidance as to what determination is in the best interests of these children. There was no home study of either party. The entirety of the evidence was through the testimony of the parties, mother's boyfriend (a laborer with a weed control business), father's cousin (a "sanitary engineer"), and his cousin's wife. These people simply did not have the education, training, or background to meaningfully assist the trial court in the decision making process.

Much like in *Williams v. Williams*, 425 N.W.2d 390 (S.D.1988), the trial court was in the position of deciding which parent was "the least worst" because the parties concentrated more on damning each other's conduct than in addressing the best interests of the children.

I do not fault the trial court for not personally visiting with the children (most often that is not at all productive), BUT, I am convinced it erred in not demanding production of more evidence. As we said in *Williams*:

> At the very least, trial courts have the authority, and at times the obligation, to require a homestudy of both parents, so it can be assured that the children are not placed, or do not remain, in surroundings seriously detrimental to their well-being.... In addition, the court may, in its discretion, call and interrogate witnesses.

*Id.* at 393 (citations omitted).

I respectfully suggest that this is one of those situations where the trial court had the obligation to do more. Judges in these cases have the awesome responsibility to protect children and "[t]he parents' personal wishes and desires must yield to what the court in the discharge of its duty regards as the children's best interest." *Jasper v. Jasper*, 351 N.W.2d 114, 117 (S.D. 1984); *Williams, supra*, at 393.

In sixteen years as a trial judge, and having heard scores of such cases, I was never able to find a crystal ball to assist me in making the difficult decision of where to place kids. Although I doubt it, perhaps this trial judge has found the magic solution. Otherwise, from the paucity of evidence, the decision was rendered purely on the basis of instinct, speculation, guesswork or chance. The decision may be correct and in the best interests of the children; however, the record does not afford us a meaningful review. I have great respect for this trial judge but am unwilling to give him the blind deference the majority does.

I would reverse and remand for further proceedings so that the trial court and this court can be assured that the best interests of the children are served. The children are entitled to and deserve no less.