**Michael J. WHALEN, Appellant,**

v.

**Dianne M. WHALEN, Appellee.**

**Nos. 17637, 17645.**

Supreme Court of South Dakota.

Considered on Briefs April 22, 1992.

Decided Aug. 19, 1992.

Rehearing Denied Sept. 14, 1992.

**278**

Michael·J. Whalen, pro se.

Lee R. Burd, Sioux Falls, for appellee.

WUEST, Justice.

Michael Whalen (Husband) appeals from the circuit court's Order affirming the referee's Report and Recommendation which dismissed Husband's Petition for Modification of Child Support. Husband raises the following three issues:

1A. Whether the extended visitation of a child support obligor's children contemplated in the divorce decree constitutes a change in circumstances sufficient to support a modification of the child support obligation.

1B. Whether a child support obligor must show a change of circumstances in order to modify his child support obligation by reason of payments made pursuant to the divorce decree.

II. Whether the referee and the circuit court abused their discretion by imposing transcript costs upon Husband.

By notice of review, Dianne Whalen (Wife) argues the referee and circuit court should have awarded her attorney fees.

III. Whether the referee and the circuit court abused their discretion by failing to consider all factors before

denying wife's motion for attorney's fees.

## FACTS

The parties were married approximately fourteen years before divorcing. They had three minor children. On March 1, 1990, the circuit court granted a divorce to Wife. On May 4, 1990, the circuit court entered a supplemental decree based on a stipulation prepared by Husband, an attorney, which awarded custody of the children to Wife with reasonable and liberal visitation to Husband. Visitation rights included an eight-week summer visitation period during June and July. It also provided Husband pay child support in the amount "of $800.00 per month during the minority of the parties' children as set forth at SDCL 25-5-18.1 and the Child Support Guidelines of the State of South Dakota." The supplemental decree required Husband to pay all expenses for medical and dental care for the children. In addition, the decree provided for Husband to pay $600.00 per month as spousal support for seven years. Finally, Husband was required to pay $250.00 per month payments on the automobile Wife was awarded. When the automobile was paid for, the payments were to continue for the balance of the seven years as "alimony."

Under the supplemental decree the Husband was awarded his interest (50%) in the law office, subject to the debt; the parties' home, subject to the debt; and his vehicles, subject to the debt. Husband had a small amount of furniture. Wife received the bulk of the parties' household goods, furnishings, and furniture, her 1988 automobile, mink coat, jewelry, and one-half of Husband's IRA. No debt was allocated to Wife. Husband assumed the remaining balance of Wife's educational loans and kept his membership in a hunting club.

## PROCEDURAL FACTS

Husband's Petition for Modification, dated June 1, 1990, claimed a change of circumstances on the following basis:

(A) The minor children would be living with him for two months of each summer and SDCL 5-7-6.14 allowed an abatement during those months; and

(B) Payment of $600.00 per month alimony was income to Wife and a deduction to Husband under SDCL 25-7-6.6 and 25-7-6.7(6).

From the petition hearing the referee specifically found Husband's monthly gross income was $2,991.17 and, after allowable deductions (not including a deduction for alimony), his net monthly income was $2,200.97. The referee further determined Wife's average presumed net monthly income (exclusive of alimony) was $631.53. The parties stipulated Husband had the minor children for more than twenty-nine consecutive days. The referee concluded she did not have jurisdiction to modify Husband's child support obligation because there were no changes in circumstances since the supplemental decree was entered. The referee denied Wife's request for attorney fees but awarded Wife the cost of preparing the hearing transcript.

The referee entered her Report and Recommendation. Pursuant to SDCL 25-7A-22, the circuit court held a hearing on Husband's objections. Husband did not object to the facts found by the referee, but objected to her conclusions of law. He objected particularly to the referee's conclusion that she was without jurisdiction to modify the child support obligation because no "change of circumstances" had been shown. More specifically, Husband argued the referee erred by failing to interpret "Child Support Guidelines of the State of South Dakota" as used in the supplemental decree to include the abatement statute and an income adjustment for alimony paid. Finally, Husband challenged the authority of the referee to assess the costs of the hearing transcript against him.

At the hearing, Husband further argued: (1) The abatement statute impliedly confers jurisdiction; and (2) the child support provision of the supplemental decree was vague. The circuit court affirmed the referee's conclusion that she did not have jurisdiction to modify the child support obligation un-

der the "change of circumstances" rationale. The circuit court denied Wife's request for attorney's fees.

 This case involves the application and interpretation of South Dakota's revised child support statutes, including the power of the court and referee to modify a divorce decree under SDCL 25–7A–22 and the effects of SDCL 25–7–6.6, –6.7, and –6.14. The construction of a statute is a question of law. *Meyerink v. Northwestern Public Service Co.*, 391 N.W.2d 180, 183 n. 5 (S.D.1986); *In re Petition of Famous Brands, Inc.*, 347 N.W.2d 882, 884 (S.D.1984). The referee's conclusions of law are fully reviewable on appeal. *Janke v. Janke*, 467 N.W.2d 494, 497 (S.D.1991). This case also involves the authority of referees to impose costs and the propriety of awarding attorney's fees. These matters are reviewed for a clear abuse of discretion. *See Shoop v. Shoop*, 460 N.W.2d 721, 726 (S.D.1990).

## I. CHANGE OF CIRCUMSTANCES REQUIREMENT

SDCL 25–7A–22 furnishes the rules for modifying a child support obligation. It provides in pertinent part:

[A child support] obligor, an obligee or the assignee may file a petition ... to increase or decrease child support *based on a change in circumstances*. ... The matter shall be set for hearing before a referee ... appointed by the court, pursuant to statute, and after due notice to all parties.... The referee shall make his report to the court, recommending the amount of the monthly support obligation of the parent or for health insurance coverage. (Emphasis supplied).

SDCL 25–7–6.1 thru –6.17 provide the child support guidelines which are used to establish child support obligations. SDCL 25–7–6.14 provides, "An abatement of a portion of the child support may be ordered if a child spends more than twenty-nine consecutive days with the noncustodial parent." SDCL 25–7–6.7 provides in part:

Deductions from monthly gross income shall be allowed as follows:

. . . .

(6) Payments made on other support and maintenance orders.

Husband points out the last two statutes do not require a change of circumstances. Husband argues the last two statutes are contradictory to the change of circumstance statute and interprets them to mean no change of circumstances is necessary to modify the supplemental divorce decree. He argues the only way to reconcile the statutes is by interpreting the latter two statutes as containing their own "per se" changes in circumstances. We disagree.

 As Husband suggests, we must construe statutes according to their intent, and intent must be determined from the statutes as a whole, as well as enactments relating to the same subject. *Border States Paving v. Dept. of Revenue*, 437 N.W.2d 872, 874 (S.D.1989); *Appeal of A.T. & T. Info. Systems*, 405 N.W.2d 24, 27 (S.D.1987); *Meyerink*, 391 N.W.2d at 183; *Simpson v. Tobin*, 367 N.W.2d 757, 763 (S.D.1985). Moreover, the intent of a statute must be derived from its language and by giving the language its plain, ordinary and popular meaning. *Matter of Estate of Pejsa*, 459 N.W.2d 243, 246 (S.D.1990); *State v. Ventling*, 452 N.W.2d 123, 125 (S.D.1990). This rule holds true unless the legislation is ambiguous or its literal meaning is unreasonable. *Famous Brands*, 347 N.W.2d at 885; *Appeal of A.T. & T.*, 405 N.W.2d at 27–28; *Christopherson v. Reeves*, 44 S.D. 634, 642, 184 N.W. 1015, 1017 (1921). *See also* SDCL 2–14–1 (1992). Finally, where statutes appear to conflict, it is our responsibility to give reasonable construction to both, and if possible, to give effect to all provisions under consideration, construing them together to make them "harmonious and workable." *Meyerink*, 391 N.W.2d at 184; *Karlen v. Janklow*, 339 N.W.2d 322, 323 (S.D.1983); *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292, 295 (S.D.1982).

 We have consistently required a party seeking modification of a child support order to demonstrate a change in circumstances occurring *since* the original

child support order was entered. *Johnson v. Johnson*, 468 N.W.2d 648, 650 (S.D. 1991); *Hoy v. Hoy*, 391 N.W.2d 685, 689 (S.D.1986); *State ex rel. Larsgaard v. Larsgaard*, 298 N.W.2d 381, 384 (S.D. 1980).[1] This is true even though the original child support order was based on a stipulation entered into between the parties. *Brunick v. Brunick*, 405 N.W.2d 633, 635 (S.D.1987); *Jameson v. Jameson (Jameson II)*, 306 N.W.2d 240, 242 (S.D. 1981); *Blare v. Blare*, 302 N.W.2d 787, 791 (S.D.1981).

■ The change in circumstances requirement was adopted prior to the enactment of SDCL 25–7A–22 in 1986. SDCL 25–4–45 (1984) provides:

In an action for divorce the court may, before or after judgment, give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same.

Under this statute, this court has required a change of circumstances to justify a child support modification. *See, e.g., Jameson II*, 306 N.W.2d at 242. This statute survived the legislature's extensive revision of SDCL ch. 25–7 and ch. 25–7A in 1989. Where a statute, which has been construed by this court, is reenacted in substantially the same terms, the legislature is presumed to have been familiar with the judicial construction and to have adopted it as part of the law. *Stormo v. City of Dell Rapids*, 75 S.D. 582, 588, 70 N.W.2d 831, 834, 51 A.L.R.2d 1123 (1955).[2]

■ In 1986, the South Dakota Legislature amended SDCL 25–7–7 to provide a schedule and guidelines for setting child support obligations. 1986 S.D. Laws ch. 218, § 11. SDCL 25–7–7, as it then existed, included a proviso that "[a]ll orders for support entered and in effect prior to July 1, 1986, may be modified in accordance with the guidelines *without requiring a showing of a change in circumstances* from the entry of the order." *Id.* (Emphasis added). This proviso clearly indicated the legislature's familiarity with the change in circumstances requirement construed by this court. SDCL 25–7–7 was repealed in 1989. 1989 S.D. Laws, ch. 220, § 19. A very similar proviso is currently codified at SDCL 25–7–6.13 which was enacted contemporaneously with SDCL 25–7–6.6, –6.7, and 6.14.[3] 1989 S.D. Laws, ch. 220. Indeed, most of what is now codified at SDCL 25–7–6.1, to –6.17 was formerly contained within SDCL 25–7–7. Thus, we must presume when the legislature reenacted the new child support guidelines, it intended to retain the change in circumstances requirement for modification. *See Campbell v. City of Chamberlain*, 78 S.D. 245, 100 N.W.2d 707 (1960); *Stormo*, 75 S.D. at 588, 70 N.W.2d at 834; *Cahalan v. Terry*, 73 S.D. 531, 45 N.W.2d 460 (1951).

## A. *Abatement.*

As the discussion above indicates, the legislature was fully aware of the "change in circumstances" requirement when it reenacted the child support guidelines in 1989. Nonetheless, it included a provision which permits a court to abate a party's child support obligation when a child spends over twenty-nine days with the obli-

---

**1.** Ample authority from other jurisdictions requires a change in circumstances to have been outside the contemplation of the parties or of the court at the time the previous order was entered. *See, e.g., In re Marriage of Feustel*, 467 N.W.2d 261, 263 (Iowa 1991); *Phelps v. Phelps*, 477 N.W.2d 552, 555 (Neb.1991); *Sweeney v. Hoff*, 478 N.W.2d 9, 10 (N.D.1991). Obviously, Whalen's "change in circumstances" does not meet this standard since he knew the extended visitation and alimony payments would occur— as did the trial court—at the time the original decree was entered. However, since neither party raised this argument in their brief and it would be a case of first impression in South Dakota, we do not now adopt this requirement.

**2.** However, this presumption is not conclusive, and if the language of the statute is plain and unambiguous, expressing an intent contrary to the construction given it, effect must be given to such intent, since there is no occasion for construction. *Id.*

**3.** SDCL 25–7–6.13 provides:

All orders for support entered and in effect prior to July 1, 1989 may be modified in accordance with the schedule *without requiring a showing of a change in circumstances* from the entry of the order. (Emphasis supplied).

gor spouse. SDCL 25–7–6.14. Contrary to Husband's argument, this provision does not mean such an event is a "per se" change of circumstances which would justify a *modification.*

■ In contrast to the meaning of modification, abate means: to demolish; to put an end to; to do away with; or to nullify, make void, or diminish. *Webster's Third New International Dictionary* 2 (1976). Use of the abatement language indicates the legislature contemplated the obligation would have already accrued when the obligor spouse seeks abatement. This construction is supported by the 1988 Report of the South Dakota Commission on Child Support (Commission Report) which prepared and recommended the 1989 amendments.[4] That report states:

> Courts throughout the state vary on their method of handling child support when a parent has the children for an extended time, such as an entire summer. Evidence revealed that the cost savings to the custodial parent when they do not have the children during substantial periods is approximately 30 to 50 percent. Therefore, *the Commission is recommending the Court be allowed to grant a reduction during those extended periods of visitation.* The Commission could not agree on any particular recommended amount for the reduction. *The proposed language provides an after-the-fact abatement* to avoid the situation where a parent does not actually exercise extended visitation yet receives a reduction in child support. The Commission also recommends that this abatement only be allowed for periods of 30 days or more of continuous visitation to avoid the potential of the parents fighting over how many days they spend with the child, not out of a desire to spend time with their children, but out of a desire to reduce their child support.

Report of the South Dakota Commission on Child Support 15 (1988) (emphasis added—footnote deleted). Footnote nine of the Commission Report provides an illustration:

> For example, if a parent exercises visitation in June for the entire month, he or she would be entitled to the abatement in the July child support. If a 50 percent abatement were allowed, the July payment would be reduced by 50 percent. *Id.*

Modification of a divorce decree, on the other hand, implies an alteration which introduces or deletes some elements of the decree "but leaves the general purpose and effect of the subject-matter intact." *See Black's Law Dictionary* 905 (5th ed. 1979). Thus, there is no conflict between the change in circumstances requirement in SDCL 25–7A–22 and the abatement provision.

■ As Husband suggests, the extended visitation provides the basis for a trial court's abatement of accrued child support. While the court may have granted Husband an abatement after the visitation occurred, Husband did not petition for an abatement. Instead, he sought modification of his child support obligation prior to any visitation. Husband has not demonstrated a change in circumstances to justify a forward-reaching modification of his child support obligation. The stipulation provided for extended visitation with no abatement of child support. The circumstances simply have not changed since entry of the divorce decree.

## B. *Alimony Payments.*

The same analysis applies to the perceived conflict between SDCL 25–7A–22

---

4. We have, on two previous occasions, looked to the report of the Child Support Commission established by executive order to further South Dakota's compliance with Public Law 98–378, The Child Support Enforcement Amendment of 1984. *Brandriet v. Larsen,* 442 N.W.2d 455, 460 (S.D.1989); *Feltman v. Feltman,* 434 N.W.2d 590, 592 (S.D.1989). It is proper to take into consideration reports of a commission transmitted to the legislature on a particular subject for the purpose of construing a statute framed with special regard to the recommendation. 73 Am. Jur.2d *Statutes* § 168 (1974). The interpretation given to proposed legislation by the department or commission proposing it is helpful to a court called upon to interpret legislative language. *See Id.*

(requiring a change in circumstances) and SDCL 25–7–6.6 and –6.7.[5] Again, the latter statutes are part of what was originally included in SDCL 25–7–7 as it appeared in 1987. 1986 S.D. Laws Ch. 218, § 11. That statute specifically recognized the change in circumstances requirement. There is, in reality, no conflict between the rules governing the circuit court in determining child support obligations, which take into account income and any deductions, and the rules governing the referee, which require a change in circumstances before a party can obtain a modification. Therefore, in order to obtain a reduction of his child support obligation, Husband was required to show circumstances had changed in the time between entry of the supplemental judgment and his petition for modification.

■ Here, Husband, an attorney, voluntarily negotiated for and entered into an agreement regarding child support. The very same agreement contained the alimony payments and the visitation schedule, including the extended visitation (which portion was drafted by Husband himself). Husband testified during cross-examination, "as a result of statutory factors, *which I considered when I entered into that agreement,* and the fact that, yes, I've met my obligation, that I'm entitled to a modification." Husband further testified, "I had looked at the law before that. I understand that I would be entitled to an abatement and that's why I'm here today. . . . I took into consideration the law in existence at the time, and the right to an abatement and the right to a decrease as a result of . . . alimony payments made."

There is no indication the income level of either party has changed since entry of the supplemental decree. The only changes were the payment of alimony and the extended visitation of two of the three children with Husband, both of which were contemplated by the stipulation. This case reduces itself to a situation where Husband entered into a harsh bargain contemplating, through his own interpretation of the child support guidelines, an escape from the bargain a short time later. The situation was similar in *Jameson v. Jameson (Jameson I),* 90 S.D. 179, 239 N.W.2d 5 (S.D.1976) where the husband, with the advice of an attorney and tax experts entered into a harsh divorce stipulation which left little for himself. *Id.* 90 S.D. at 183, 239 N.W.2d at 7. There, we refused to construe the husband's subsequent realization that he could not carry out the terms of the stipulation as a change justifying a modification of child support. *Id.* Likewise here, we cannot say there has been a change in circumstances sufficient to support a modification. It was incumbent on Husband to protect himself at the time he entered into the stipulation.

■ Husband further argues part of the stipulation which reads "Plaintiff (Husband) will pay to defendant (Wife) as support for the minor children ... $800 per month ... as set forth at SDCL 25–5–18.1 *and the Child Support Guidelines of the State of South Dakota"* should be interpreted to include reductions in accordance with SDCL 25–7–6.6 (definition of gross income) & SDCL 25–7–6.7(6) (deductions for other support and maintenance orders) and SDCL 25–7–6.14 (abatement for extended visitation). A petition for modification is not a proper method of achieving this interpretation—at least absent a

---

5. SDCL 25–7–6.6 provides:

Gross income from a business, profession, farming, rentals, royalties, estates, trusts or other sources, are the net profits or gain, or net losses shown on any or all schedules filed as part of the parents' federal income tax returns or as part of any federal income tax returns for any business with which he is associated, except that the court may allow or disallow deductions for federal income taxation purposes which do not require the expenditure of cash, including, but not limited to, depreciation or depletion allowances, and may further consider the extent

to which household expenses, automobile expenses, and related items are deductible or partially deductible for income tax purposes. In the event a court disallows depreciation, it may consider necessary capital expenditures which enhance the parent's current income for child support purposes.

SDCL 25–7–6.7 provides in pertinent part:

Deductions from monthly gross income shall be allowed as follows:

. . . .

(6) Payments made on other support and maintenance orders.

change in circumstances. The referee and the circuit court were correct in refusing to modify the support obligation.[6]

## II. PROPRIETY OF AWARDING TRANSCRIPT COSTS

■ The third issue raised by Husband is whether a referee may properly tax the cost of producing a hearing transcript on a party. The referee imposed the cost of the transcript on Husband. Husband argues the referee is without such authority based on the fact SDCL 15–17–5 authorizes courts to impose such costs, but does not specifically indicate referees. However, given the specific language set out in SDCL 15–6–53(a) (1992 Supp.), Husband's argument is without merit. That statute provides, in pertinent part:

In cases involving an order for support as defined in subdivision (13) of § 25–7A–1, any referee appointed to hear the case may recommend the imposition of attorney's fees *and costs* on one or both of the parties.

(Emphasis added). The referee and the circuit court were acting within their authority in requiring Husband to pay transcript costs.

## III. ATTORNEY'S FEES

Wife sought attorney's fees for both the modification hearing and the hearing before the circuit court on Husband's objections to the Referee's Report and Recommendations. None were awarded. SDCL 15–17–7 (1984) allows the court to award attorney fees in cases of separate maintenance; this statute and SDCL 15–6–53(a), read together, indicate attorney fees may be awarded in child support modification proceedings.

■ As Wife points out, the allowance of attorney fees in domestic relations cases rests in the sound discretion of the court and will not be reversed absent a

showing of a clear abuse of that discretion. *Shoop,* 460 N.W.2d at 726. *Accord Strickland v. Strickland,* 470 N.W.2d 832, 839 (S.D.1991); *Pribbenow v. Van Sambeek,* 418 N.W.2d 626, 630 (S.D.1988).

In exercising its discretion, a court must follow a two step procedure. First, the court must determine what constitutes a reasonable attorney fee. Second, the court must determine what portion of that fee should be paid by the opposing party. The second step requires a consideration of 'the parties' relative worth, income, liquidity, and whether either party unreasonably increased the time spent on the case.

*Shoop,* 460 N.W.2d at 726 (citing *Kier v. Kier,* 454 N.W.2d 544 (S.D.1990); *Gross v. Gross,* 355 N.W.2d 4, 9 (S.D.1984)). *Accord Strickland,* 470 N.W.2d at 839–40; *Pribbenow,* 418 N.W.2d at 630. It appears the referee's primary reason for denying attorney fees was its finding that "insufficient evidence was elicited which would establish a malicious or vexatious motive behind the filing of the petition for modification sufficient to warrant the imposition of attorney fees...." The referee did not examine the relative income of the parties (for purpose of attorney fees), the relative economic worth of the parties, or the liquidity of the parties' assets. Thus, it appears only one prong of the test was applied by the referee. Property held by the parties is an essential consideration in awarding attorney's fees in a divorce case. *Ryken v. Ryken,* 440 N.W.2d 300, 306 (S.D.1989). In failing to address all the pertinent factors, the referee abused her discretion. Accordingly, we must remand this issue to the circuit court to reconsider attorney fees in light of the above factors.

Wife has also filed a motion for an award of appellate attorney fees. The motion is accompanied by an itemized statement of costs incurred and legal services rendered as required by *Malcolm v. Malcolm,* 365

---

6. It is doubtful the legislature intended a spousal support order contained within the same decree as the child support order be designated an "other support and maintenance order[ ]" within the meaning of SDCL 25–7–6.7. However, because of our holding that Husband failed to

demonstrate any change in circumstances, we need not reach this issue. Nor do we address the issue of whether alimony payments constitute gross income within the meaning of SDCL 25–7–6.6.

N.W.2d 863, 866 (S.D.1985). The same two-part analysis applies as set forth above. *Strickland,* 470 N.W.2d at 840; *Johnson,* 468 N.W.2d at 652. Based on these factors, we award Wife $1,500.00 in appellate attorney fees.

We hereby affirm case # 17637, the circuit court's order affirming the referee's report and dismissing the husband's petition for modification of child support. We reverse and remand case # 17645, the denial of wife's attorney's fees for the modification hearing and the hearing before the circuit court on husband's objections to the referee's report and recommendation.

MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

### I.

Child support could not be established at "$800.00 ... as set forth ... at the Guidelines" because the guidelines established child support at $680.00 per month without benefit of any consideration of alimony payments by Michael Whalen. It appears that, as a matter of law, the original amount of $800.00 was entered in error. Under *Janke v. Janke,* 467 N.W.2d 494, 498 (S.D.1991), this Court may and should consider that Michael Whalen objected to the Referee's Conclusion of Law; and that, therefore, there exists a patent error of law.

### II.

Disallowing the alimony deduction is an error of law. Accordingly, it falls under the legal thesis of *Janke, supra.* Such an interpretation restricts Michael Whalen, father, and the three children to live on approximately $533.00 per month during extended visitation; thus, it hurts father, economically, for the balance of the year. *See,* SDCL 25–7–6.6, 25–7–6.7 and Internal Revenue Code § 215(a). Alimony paid by Michael Whalen should have created a deduction but it did not under the rulings of the Referee and Circuit Judge. Rather, it

was totally ignored. Monthly child support should have been adjusted. In South Dakota, the children's needs and the obligor's ability to pay, must be considered in determining a reasonable amount of child support. *Bruning v. Jeffries,* 422 N.W.2d 579 (S.D.1988). Further, SDCL 25–7–6.6 defines "gross income" to include "... the net profits or gains, or net losses shown on any or all schedules filed as part of the parents' financial *income tax returns...*" (emphasis supplied mine).

### III.

This case should be reversed and remanded to the circuit court. However, I would affirm the circuit court's award of transcript costs because Referee has the authority to recommend the payment of same to the circuit court. Such an amount is not so great as to jeopardize Michael Whalen's security. SDCL 15–6–53(a) (1992 Supp.). Further, concerning an award of the attorney's fees at the trial court level, I would affirm a denial thereof based upon a greater net income of the wife than the husband after the divorce proceeding. Under *Pochop v. Pochop,* 233 N.W.2d 806 (S.D.1975), there was no abuse of discretion, particularly in light of the liquidity of the parties' assets. Regarding an appellant attorney's fees award, under the theory that appellee loses this appeal (*see, Hulm v. Hulm,* 484 N.W.2d 303, 306 (S.D. 1992) (Henderson, J., dissenting)), no award should be entered because (1) child support payment entered by the trial court was (inceptually) clearly in error (2) alimony payments should have been taken into consideration, as referred to above, and were not.